UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
RONALD HARDY,

            Petitioner,

                              <u>MEMORANDUM AND ORDER</u>

      -against-                17-CR-0372(JS)


UNITED STATES OF AMERICA,

            Respondent.
---------------------------------X
APPEARANCES
For Petitioner:    Ronald Hardy, <u>Pro se</u>
                    #90282-053
                    USP Canaan
                    U.S. Penitentiary
                    Satellite Camp
                    P.O. Box 200
                    Waymart, Pennsylvania  18472

For Respondent :   Whitman G.S. Knapp, Esq.
                    Kaitlin Farrell, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    271 Cadman Plaza East
                    Brooklyn, New York  11201


SEYBERT, District Judge:

      Presently before the Court is the <u>pro se</u> Section 2255 habeas petition of Ronald Hardy ("Petitioner" or "Hardy"), seeking to vacate his conviction and sentence (hereafter, the "Petition"), as well as requesting his interim release on bond pending a final determination on the Petition (hereafter, the "Bond Motion").  (See Petition, ECF No. 1240; <u>see also</u> Suppl. Bond Motion, ECF No. 1270; Reply, ECF No. 1285; Suppl. Reply, ECF No. 1286.)  The Government opposes the Petition and Bond Motion.  (See Omnibus Opp'n, ECF No.

1281.)  For the following reasons, the Petition and Bond Motion are DENIED in their entireties.

<u>BACKGROUND</u>

The Court presumes the parties' familiarity with the facts of this case.  <u>See generally</u> <u>United States v. Chartier</u>, No. 17-CR-0373, 2021 WL 3795352 (E.D.N.Y. Aug. 26, 2021) (denying co-defendants' motions for acquittal or, alternatively, new trials[1]), <u>aff'd</u>, Nos. 22-3125 (L), 23-6080 (CON), 2024 WL 3617023 (2d Cir. Aug. 1, 2024) (summary order).  For the reader's convenience, the Court states summarily that Petitioner helped run a so-called pump-and-dump boiler room operation which involved aggressively pushing penny stocks upon primarily elderly investors.  <u>See</u> <u>id.</u> at *2; <u>see also</u> <u>Chartier</u>, 2024 WL 3617023, at *1.  Said operation was a fraudulent scheme structured to artificially inflate the prices of such penny stocks so their owners profited from their sales.

On July 11, 2017, Hardy was charged with eight counts under a nine-count Indictment, to wit: Counts 1, 2, 3, 5, 6, 7, 8, and 9.  (<u>See</u> ECF No. 1.)  On July 12, 2017, Hardy entered a plea of not guilty.  (<u>See</u> ECF No. 13.)  After an initial temporary

---

[1]  More accurately, the Court granted, in part, Chartier's motion to the extent it vacated his conviction as to Count Sixteen of the subject superseding indictment.  <u>See</u> <u>Chartier</u>, 2021 WL 3795352, at *1, *26-29.  In all other respects, Chartier's motion was denied. <u>See</u> <u>id.</u> at *18, *52.

2

detention (see ECF Nos. 14, 63), on July 19, 2017, Petitioner was released on a $1 million secured bond with conditions. (See ECF Nos. 80, 82.) Among other conditions, Petitioner was placed under the supervision of Pretrial Services and subject to random visits by a Pretrial Services officer and was required to report to Pretrial Services as directed; he was also required to turn over his passport and was restricted from traveling outside of New York City and Long Island. (See Order Setting Conditions of Release and Appearance Bond, ECF No. 82 (sealed).)

A little more than a year later, on August 22, 2018, Petitioner entered a change of plea, pleading guilty to all the counts brought against him; however, said plea was not pursuant to a plea agreement with the Government. (See ECF No. 265; see also Sent'g Hr'g Tr. 48.) Approximately a month later, on September 28, 2018, the Court entered an order modifying the terms of Hardy's bond, removing "the condition of a location restriction program, including location monitoring, house detention, and a curfew" in part to facilitate Defendant's working as an Uber driver. (See ECF No. 275.) All other conditions remained unchanged.

On September 12, 2019, Petitioner was sentenced on Counts 1-3, and 5-9; other than Count 1, for which he received a 60-month sentence of incarceration, Petitioner was sentenced to 120 months' incarceration on each Count, with all sentences to run concurrently. (See Judgment, ECF No. 527.) A three-year sentence

3

of supervised release was also imposed, as well as orders of forfeiture and restitution,[2] with the restitution amount being approximately $15.4 million and for which Petitioner was jointly and severally liable. (See id.) Upon Petitioner's request, his surrender date was extended to January 6, 2020; he remained on bond pending his surrender. (See Sent'g Hr'g Tr. 48; see also Sent'g Hr'g Minute Entry, ECF No. 526.) Because there was no plea agreement, Petitioner was advised of his right to appeal. (See Sent'g Hr'g Tr. 48-49.)

Via counsel, Petitioner filed a Notice of Appeal on September 24, 2019. (See ECF No. 533.) On November 13, 2019, the Second Circuit issued an order informing Petitioner his appeal was in default for failure to pay the required filing fee and that said appeal would be dismissed effective December 4, 2019 unless either the required fee was paid or Petitioner sought to proceed in forma pauperis. See Hardy v. United States, No. 19-3067, slip order (2d Cir. Nov. 13, 2019). On February 22, 2021, after Petitioner failed to cure his appeal default, the Second Circuit issued a Mandate dismissing Petitioner's appeal. (See 2d Cir. Mandate, ECF No. 934.)

---

[2] In accordance with the original Judgment, a subsequent Amended Judgment with an Order of Restitution was entered. (See Judgment at 8; see also Am. Judgment, ECF No. 1426.) Pursuant to the Order of Restitution, Petitioner is jointly and severally liable for the $15.4 million restitution amount. (See Am. Judgment at 9-12.)

Of further relevance, in addition to originally extending Petitioner's surrender date to allow Petitioner "to spend one last holiday with his family and his children" (Sent'g Hr'g Tr. 48:8-9), the Court granted nine additional extensions of time for Petitioner to surrender to the Bureau of Prisons ("BOP"). (See ECF Nos. 628, 770, 830, 898, 921, 964, 980, 1085, 1201.) Petitioner's extension requests, which where all counseled requests, were based primarily upon medical reasons and, relatedly, the COVID-19 Pandemic. (See, e.g., Gov't Opp'n to 10th Surrender Extension Request (the "Redacted Opp'n"), ECF No. 1234 (redacted), at 1 (delineating Petitioner's nine prior surrender extension requests).) However, after three years, nine granted extensions, and for reasons filed under seal, in the Fall of 2022, the Government opposed Petitioner's tenth surrender extension request, which was also a counseled request. (See Gov't Opp'n to 10th Surrender Extension Request, ECF No. 1235 (sealed).) Among other things, it persuasively argued:

> The defendant's sentence has now been adjourned nine times over approximately three years based on various purported health issues. There is no reason he cannot receive treatment for his latest purported illness while serving his sentence. This, alone, is sufficient reason for the Court to deny Hardy's tenth request to adjourn his surrender date.

(Redacted Opp'n at 2.)    Agreeing with the Government, the Court denied Petitioner's tenth surrender extension request and directed:

> The defendant shall surrender for the service of the sentence as previously ordered, **before 2:00 PM on 10/24/2022**, at the institution designated by the Federal Bureau of Prisons. It is further ordered that the Federal Bureau of Prisons ensure that the defendant receive[s] all necessary medications prescribed by the defendant's physicians while in custody.

(Oct. 20, 2022 Elec. Order.)    Petitioner complied and self-surrendered; thereafter, 17 days later, on November 9, 2022, he proceeded to file his pro se Petition.

## DISCUSSION

I.    Applicable Law:  The Section 2255 Standard

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, 562 U.S. 86, 91, 131 S. Ct. 770, 780, 178 L. Ed. 2d 624 (2011).  To obtain relief under Section 2255, a petitioner must show "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a); see also United States v. Hoskins, 905 F.3d 97, 102 (2d Cir. 2018). Therefore, a collateral attack on a conviction or sentence is

available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)); accord Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000); Rodriguez v. United States, No. 11-CV-2957, 2013 WL 6171618, at *3 (S.D.N.Y. Nov. 25, 2013), aff'd, 679 F. App'x 41 (2d Cir. Feb. 15, 2017).

When determining whether to grant relief, Second Circuit precedent "instructs that § 2255 review is 'narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources.'" Hoskins, 905 F.3d at 102 (quoting Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks omitted)). Additionally, in advancing a federal habeas corpus writ, the petitioner has the burden of proving his claims by a preponderance of the evidence. See Negron v. United States, 520 F. Supp. 3d 296, 301 (E.D.N.Y. 2021) ("A § 2255 movant bears the burden to prove the claims in his § 2255 motion by a preponderance of the evidence." (citing Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000) (further

citation omitted)); accord Skaftouros v. United States, 667 F.3d 144, 158 (2d Cir. 2011).

As Petitioner's submissions were filed pro se, the Court has liberally construed them "'to raise the strongest arguments that they suggest.'" Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Nonetheless, this does not excuse Petitioner "'from comply[ing] with relevant rules of procedural and substantive law.'" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)).

## II.  Application

### A.  The Petition

#### 1.  Petitioner's Position

Initially, Petition asserts his Petition, filed some three years after he was sentenced, is timely. Indeed, while recognizing the one-year limitation period within which to file a Section 2255 habeas petition, Petitioner also highlights "a defendant must be 'in custody' in order to file such a motion." (Petition at ECF p.4.) He relies upon Abimbola v. United States, 369 F. Supp. 2d 249, 252 (E.D.N.Y. 2005), in support of this habeas maxim: "To do this, the petitioner must be in custody pursuant to the challenged sentence when the petition for collateral review is filed." (Id. (quoting Abimbola).) He claims: "[D]espite having been sentenced more than one year ago, and his appeal having been

dismissed more than one year ago, [he] was not 'in custody' until his recent surrender" and, therefore, "he could not have sought Section 2255 relief until after his self-surrender for service of his sentence." (Id.)

Substantively, in seeking to have his sentence vacated, Petitioner raises one claim of ineffective assistance of counsel. (See Petition § II(B).) In a conclusory manner, Petitioner contends his retained defense counsel advised him cooperating with the Government was not in his best interest. (See id. at ECF pp.4-5.) Relatedly, Petition baldly claims: "Had Defendant been given an opportunity to cooperate, he would have provided substantial assistance resulting in the filing of a U.S.S.G. 5K1.1 motion by the Government that the Court would almost certainly have viewed favorably at sentencing." (Id. at ECF p.5.)

Petitioner also complains his defense counsel advised him against accepting the Government's plea offer, which would have required Petitioner to plea guilty to less counts of the Indictment, since accepting the offer "would require the relinquishment of [Petitioner's] appellate rights." (Id.) Instead, "[a]ccepting counsel's advice, Defendant rejected the more favorable plea offer, only to be subsequently advised by the same counsel to enter an open plea of guilty." (Id.) Petitioner speculates his counsel's advice to not pursue a cooperation agreement or counsel's advice to not accept the Government's plea

agreement "was motivated by his [counsel's] financial interests." (Id. at ECF p.7 (arguing further that "counsel stood to gain considerably more if this case proceeded to trial").)

### 2. The Government's Position

In a cursory manner, the Government maintains the Petition is untimely and is otherwise without merit. (See Opp'n at 1-2.)

### 3. Petitioner's Reply

In reply, Petitioner would have the Court rebuke the Government's statute of limitations defense, arguing "a defendant cannot seek relief under 28 USC 2255 unless he is ***in custody*** serving out the sentence under attack." (Reply at ECF p.1 (emphasis in original).) In that vein, Petitioner argues his "sentence was not being served, and he was not ***in custody*** for purposes of seeking relief under 28 USC 2255, until after his self-surrender in October 2022." (Id. (emphasis in original).) Petitioner also summarily and generally contends he did not become aware of his "constitutional claim", i.e., his ineffective-assistance-of-counsel claim, until after he began serving his sentence, thereby making his November 9, 2022 Petition timely pursuant to Section 2255(f)(4). (See id. at ECF p.2.)

[Remainder of page intentionally left blank.]

10

B.    <u>The Court's Ruling</u>

1.    <u>Petitioner's "In Custody" Argument Fails</u>

In relevant part, Section 2255(a) provides: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "A district court may not entertain a collateral attack on a sentence imposed by a federal court unless the petitioner satisfies the jurisdictional 'in custody' requirement of 28 U.S.C. § 2255." <u>Abimobola</u>, 369 F. Supp. 2d at 252; <u>see also, e.g.</u>, <u>Cardenas v. United States</u>, No. 20-CV-4509, 2022 WL 1213338, at *3 n.2 (S.D.N.Y. Apr. 25, 2022) (noting "[c]ustody is a prerequisite to the Court's [habeas] jurisdiction" (citing <u>Maleng v. Cook</u>, 490 U.S. 488, 490 (1989))).

The phrase "in custody" is not defined in the statue. Yet, the Supreme Court has instructed "we have very liberally construed the 'in custody' requirement for purposes of federal habeas." <u>Maleng</u>, 490 U.S. at 492. The Court further implicitly instructs that "in custody" requires a present degree of "restraint from a conviction." <u>See</u> <u>id.</u> (explaining "we have never extended [the 'in custody' requirement] to the situation where a habeas petitioner suffers no present restraint from a conviction"). With that guidance, this Court is compelled to find Petitioner's "in custody" argument without merit.

As stated, relying upon Abimbola, Petitioner asserts that to avail himself of Section 2255, he must be "***in custody serving out the sentence*** under attack." (Reply at ECF p.1 (underline emphasis added.) According to Petitioner's logic, it was only once he had both self-surrendered to the BOP and was actively serving his sentence, that he was actually "in custody" and, thus, Section 2255 was triggered permitting him to seek habeas relief. Not so.

While it is true "[a] district court may not entertain a collateral attack on a sentence imposed by a federal court unless the petitioner satisfies the jurisdictional 'in custody' requirement of 28 U.S.C. § 2255", the Abimbola Court further clarified "[p]hysical confinement is not necessary to satisfy the 'in custody' requirement." 369 F. Supp. 2d at 252.Id. By way of example, it explained, "a petitioner who is on parole or serving a term of supervised release is 'in custody' for the purposes of the federal habeas corpus statue." Id.; cf., e.g., Green v. United States, 415 F. Supp. 3d 338, 341 (W.D.N.Y. 2019) ("[C]ourts have uniformly held that petitioners still in state custody who have yet to begin serving a consecutive federal sentence may nevertheless challenge that federal sentence and thus are subject to the § 2255 statute of limitations." (citing Perry v. Warden Fort DIX FCI, 609 F. App'x 725, 727 (3d Cir. 2015)); Ospina v. United States, 386 F.3d 750, 752 (6th Cir. 2004) ("A prisoner is

in custody for the purposes of § 2255 when he is incarcerated in either federal or state prison, <u>provided that a federal court has sentenced him</u>." (citations omitted)) (emphasis added).

Similarly, other courts have found criminal defendants who had been sentenced, but who are not yet incarcerated, to be "in custody" for habeas purposes. <u>See, e.g.</u>, <u>Carroll v. United States</u>, No. 23-CV-0963, 2025 WL 2430562, at *5 (N.D. Ill. Aug. 22, 2025) ("Although the court has extended Carroll's report date pending disposition of his § 2255 motion, meaning that he is not yet incarcerated, he is nevertheless 'in custody' for purposes of § 2255."); <u>United States v. Saleh</u>, No. 15-CR-11552, 2016 WL 2766305, at *3 (N.D. Ill. May 13, 2016) (rejecting petitioner's "not 'in custody'" argument advanced in support of alleged timeliness of a Section 2255 petition where "petitioner was originally sentenced on March 26, 2014, at which time the court ordered that he surrender to the BOP on May 20, 2014" and which "surrender date was subsequently extended numerous times", and finding, instead, petitioner's "incarceration lay in the future, allowing him to seek relief pursuant to § 2255"); <u>United States v. Bradley</u>, No. 13-CR-20622, 2016 WL 5799341, at *2 (E.D. Mich. Oct. 5, 2016) (adopting, over objection of the Government, magistrate judge's recommendation that "[d]efendant under sentence released on bond pending execution of his sentence [] satisfied § 2255's 'in custody' requirement"; relying upon Supreme Court's analysis

13

of "in custody" requirement in context of Section 2254 habeas in making ruling (discussing <u>Hensley v. Municipal Court</u>, 411 U.S. 345 (1973)).

The determination of the <u>Bradley</u> Court is equally applicable here; under the facts of this case, for purposes of Section 2255, Petitioner was "in custody" before his self-surrender.  The <u>Bradley</u> Court's discussion of the <u>Hensley</u> case elucidates this Court's similar "in custody" finding.  In <u>Bradley</u>, the court explained:

> The Supreme Court expressly addressed the question of whether a defendant on bond awaiting the execution of his sentence can satisfy the "in custody" requirement in the context of a state court prisoner seeking habeas relief pursuant to 28 U.S.C. § 2254 in <u>Hensley v. Municipal Court</u>, 411 U.S. 345 (1973).  In <u>Hensley</u> the petitioner was sentenced in state court to one year of imprisonment.  After exhausting his available state court remedies the petitioner filed his § 2254 petition in federal district court.  <u>Id.</u> at 346.  At the time of the filing the petitioner had not begun to serve his sentence, and remained on bond.  <u>Id.</u> at 346-347.  As a condition of his bond, the petitioner could be rearrested if he failed to appear when required to.  <u>Id.</u> at 247.
>   The Supreme Court was faced with the question of whether the petitioner satisfied the "in custody" requirement as used in the habeas corpus statute.  Noting that "[t]he custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty[,]" the Supreme Court determined that he did.  <u>Id.</u> at 349.  <u>Underlying this holding was a finding that the petitioner was "subject to restraints</u>

> not shared by the public generally," namely, the obligation to appear at all times and places as ordered by the Court. *Id.* at 351. The Court also emphasized that the petitioner remained at large only by the grace of a stay entered by the sentencing court, and that his incarceration was not a speculative possibility depending on any contingencies. *Id.* at 351-52. The Supreme Court expressly limited its holding to cases in which a petitioner was under sentence and had satisfied all exhaustion requirements. *Id.* at 353.

*Bradley*, 2016 WL 5799341, at *2-3 (emphasis added). The *Bradley* Court further expounded that, relying upon *Hensley*, in *Lawrence v. 48th District Court*, the Sixth Circuit Court of Appeals distilled a three-part "in custody" test to determine if that component of the Section 2254 habeas jurisdiction requirement is met. *See id.* at *3 (citing *Lawrence v. 48th Dist. Court*, 560 F.3d 475 (6th Cir. 2009)). Said test requires a petitioner to demonstrate: "(1) his personal recognizance bond subjected him to restraints not shared by the public generally; (2) the sentence that had been stayed involved incarceration; and (3) he had exhausted his state remedies." *Id.* (citing *Lawrence*, 560 F.3d at 480). The *Bradley* Court found the rationale of both *Hensley* and *Lawrence* applicable to Bradley's Section 2255 habeas "in custody" inquiry, since "Bradley [wa]s subject to bond conditions requiring him to appear at any time and his forthcoming imprisonment [wa]s not speculative or based on any contingencies." *Id.* (further collecting cases

reaching the same conclusion). Accordingly, under such a scenario, a petitioner is "in custody" for purposes of Section 2255.

Here, applying the relevant components of the "in custody" test identified by the Lawrence Court, and as applied by the Bradley Court, there can be no doubt Petitioner was: (a) "under sentence"; (b) subject to restraints not shared by the public generally, i.e., subject to bond conditions requiring him to appear at any time; and (c) facing forthcoming incarceration, which incarceration was neither speculative nor based upon any contingencies. Given this combination of factors, notwithstanding he was not yet incarcerated, i.e., physically detained, Petitioner was "in custody" for purposes of Section 2255.

Given this determination that Petition was "in custody", the Court observes that for Petitioner to have commenced a timely habeas petition, under a generous construction, at the very latest, he would have had to have done so by no later than February 22, 2022, one year after the Second Circuit issued its February 22, 2021 Mandate, which dismissed Petitioner's appeal.[3] (See Mandate, ECF No. 934); see also 28 U.S.C. § 2255(f)(1). Petitioner's

---

[3] The Court recognized the Government takes the position that, although Petitioner "filed a notice of appeal on September 27, 2019, he never perfected it." (Opp'n at ECF p.2 n.1.) Further, "[o]n February 1, 2021, the Second Circuit Court of Appeals entered an order dismissing it effective December 4, 2019." (Id. (citation omitted).) The Court does not disagree, but, in addressing this issue, it construes the Petition to raise the strongest argument possible, even if it is only theoretical.

November 9, 2022 Petition is well outside this one-year limitation period, making it untimely.

Moreover, Petitioner has not made any claim of equitable tolling. Nor is the Court able to discern any basis upon which such a claim would lie given the record before it. See, e.g., Baldayaque v. United States, 338 F.3d 145, 151 (2d Cir. 2003) ("Equitable tolling . . . is only appropriate in rare and exceptional circumstances. To merit application of equitable tolling, the petitioner must demonstrate that he acted with reasonable diligence during the period he wishes to have tolled, but that despite his efforts, extraordinary circumstances beyond his control prevented successful filing during that time." (citation omitted)). And, even if the Court were to find exceptional circumstances beyond Petitioner's control, which it does not, there is absolutely no indication Petitioner acted with reasonable diligence during the period he could claim should be tolled. See, e.g., Rabbani v. United States, 156 F. Supp. 3d 396, 404 (W.D.N.Y. 2016) (instructing it is petitioner's burden "to establish the entitlement to equitable tolling" (citing Sorce v. Artuz, 73 F. Supp. 2d 292, 299 (E.D.N.Y. 1999)).

At bottom: "A person whose incarceration lies in the future is in custody and has full access to § 2255." Godoski v. United States, 304 F.3d 761, 762–63 (7th Cir. 2002) (citing Hensley v. Municipal Court, 411 U.S. 345 (1973); Maleng, 490 U.S. at 493).

17

That is the case here; thus, even if the Court were to determine "the date on which [Petitioner's] judgment of conviction became final", 28 U.S.C. § 2255(f)(1), to have been February 21, 2021, the date when the Second Circuit issued its Mandate regarding the dismissal of Petitioner's appeal, Petitioner had full access to seeking Section 2255 relief until February 21, 2022. See 28 U.S.C. § 2255(f). Because Petitioner waited until November 9, 2022, after the theoretical applicable one-year period of limitation to file his Petition, he is foreclosed from seeking Section 2255 habeas relief. Hence, on tardiness alone, the Petition is DENIED.

## 2. Petitioner's Section 2255(f)(4) Argument Fails

As an apparent throwaway argument, Petitioner also asserts in a conclusory fashion that his Petition is timely pursuant to Section 2255(f)(4) because he "did not become aware of the facts upon which this motion is based—i.e., counsel's material misrepresentations and ineffectiveness—until after his self surrender." (Petition at ECF p.4.) He provides no further argument, factual details, or proffered evidence supporting this contention. However, given that a due-diligence inquiry is fact-specific, see generally Wims v. United States, 225 F.3d 186 (2d Cir. 2000), and Petitioner has failed to delineate any facts regarding his alleged post-surrender discovery of counsel's supposed ineffectiveness, Petitioner's bald claim of late discovery is unavailing.

To begin, "[a]lthough [courts] accord filings from pro se litigants a high degree of solicitude, even a litigant representing himself is obliged to set out 'identifiable arguments' in his principal brief." United States v. Cabral, No. 12-CR-0336, 2025 WL 3628402, at *6 (E.D.N.Y. Dec. 12, 2025) (quoting Terry v. Inc. Vill. of Patchogue, 826 F.3d 631, 632-33 (2d Cir. 2016); internal quotations omitted; further citation omitted). Yet, Petitioner has failed to do so as to his Section 2255(f)(4) contention. In the absence of any developed argument regarding Petitioner's exercise of due diligence, and finding nothing further in the record supporting Petitioner's Section 2255(f)(4) position, the Court finds Petitioner's reliance upon Section 2255(f)(4) unavailing to establish his Petition is timely.

Moreover, and in any event, Section 2255(f)(4) provides a one-year limitation period to seek Section 2255 relief which runs from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." (Emphasis added.) As stated, supra, Petitioner wholly fails to explain why, through the exercise of due diligence, he could not have discovered his ineffective-assistance-of-counsel claims sooner than when he self-surrendered. Given the expanse of time Petitioner remained at liberty, albeit on bond, together with the fact that he also remained represented throughout that period, although by different counsel, it defies credulity that Petitioner

19

could not have exercised due diligence to uncover this purported claim. See, e.g., United States v. Wright, No. 21-CV-6496, 2025 WL 2163338, at *7-8 (W.D.N.Y. July 30, 2025) (finding incredible petitioner's explanation regarding alleged ineffective assistance and further finding petitioner did not exercise reasonable diligence, over a three-year period, in investigating his ineffective assistance claim). It is highly likely that a duly diligent person in a scenario such as that of Petitioner could have discovered this ineffective-assistance claim well before the time Petitioner asserts he discovered the claim. Indeed, at a minimum, in today's world and given the ubiquitous nature of the internet (as well as artificial intelligence), the Court is hard pressed to conclude that a basic search (or prompt) would not have identified ineffective-assistance-of-counsel as a possible basis for Petitioner to seek Section 2255 habeas relief and, thereby, trigger some due diligence, i.e., investigating further whether the facts of Petitioner's case presented ineffective-assistance-of-counsel grounds for habeas relief. And, Petitioner had more than three years to investigate any types of claims which would support a habeas petition, including claims of ineffective-assistance-of-counsel. Moreover, in that time span, Petitioner had other counsel with whom he could have discussed grounds to seek habeas relief. (Indeed, as indicated, supra, all of Petitioner's ten surrender extension requests were submitted by

20

counsel.)  At bottom, an ineffective-assistance claim is not such an elusive basis that, with due diligence, it could not have been discovered, whether a petitioner is counseled or not; it certainly is not the case here, given its unique facts.  Therefore, the Petition is also DENIED as untimely pursuant to Section 2255(f)(4).

   3. <u>Petitioner's Ineffective-Assistance Claim Need Not be Considered</u>

  Because his Petition is time-barred, the Court need not consider Petitioner's ineffective-assistance claim.  <u>See, e.g.</u>, <u>United States v. Fernandez</u>, 795 F. Supp. 3d 457, 461 (S.D.N.Y. 2025) (declining to discuss petitioner's ineffective-assistance-of-counsel claim where petition was time-barred pursuant to Section 2255(f)(4)).  However, if said claim were to be considered, on their face, Petitioner's arguments regarding defense counsel's advice not to pursue a cooperation agreement and not to enter into a plea agreement would fail to meet the strictures of the well-known, applicable <u>Strickland</u> test.

> Claims of ineffective assistance of counsel are evaluated under the framework set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  "First, the [petitioner] must show that counsel's performance was deficient." <u>Strickland</u>, 466 U.S. at 687.  "Second, the [petitioner] must show that the deficient performance prejudiced the defense." <u>Id.</u>

<u>Herring v. United States</u>, No. 20-CV-9752, 2025 WL 3124678, at *4 (S.D.N.Y. Nov. 6, 2025).  As to the first, "performance" prong, a petitioner must: (a) "show that his counsel's performance fell

below an objective standard of reasonableness under prevailing professional norms", with the court's review being highly deferential and indulging in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"; and (b) "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." United States v. Peterson, 896 F. Supp. 2d 305, 312 (S.D.N.Y. 2012) (quoting Strickland; internal quotation marks omitted). As to the second, "prejudice" prong, a petitioner "must demonstrate that, 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Stickland). Further, "[w]here a petitioner's conviction resulted from his own guilty plea, he must show that 'there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial.'" Id. (quoting United States v. Arteca, 411 F.3d 315, 320 (2d Cir.2005) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). "Because both parts of the Strickland test must be satisfied for a petitioner to establish ineffective assistance of counsel, failure to satisfy one part of the test frees a district court from assessing whether the petitioner satisfied the other part of the test." Velez v. United States, No. 05-CV-0537, 2006 WL 1952191, at *4 (S.D.N.Y. July 10, 2006) (citing Strickland, 466 U.S. at 699 (instructing a court

need not "address both components of the [two-part Strickland] inquiry if the defendant makes an insufficient showing on one")).

Here, Petitioner's ineffective-assistance claims would fail for various reasons. First, they are little more than conclusory allegations, devoid of any support; such vague, unsubstantiated "Monday-morning quarterbacking" claims of ineffective-assistance-of-counsel would not withstand the strictures of a Strickland analysis, especially given the strong presumption of competence afforded to counsel. See, e.g., Herring, 2025 WL 3124678, at *4; see also Norville v. United States, 151 F. Supp. 3d 329, 336 (S.D.N.Y. 2015) ("An attorney's performance is given a strong presumption of effectiveness, as courts recognize a 'wide range of professional assistance.'" (quoting Strickland, 466 at 689)). Moreover, where, as here, a petitioner follows counsel's advice and pleads without the benefit of an agreement with the Government, such decision "constitutes strategic advice that should not be second-guessed by the court." Peterson, 896 F. Supp. 2d at 315 (citing, by way of example, Purdy v. United States, 208 F.3d 41, 48 (2d Cir.2000) (finding attorney "acted reasonably" when he told client about an offer "without specifically advising [defendant] to take the plea"), and Lake v. United States, 465 F. App'x 33, 35 (2d Cir.2012) (summary order) (counsel's "miscalculations regarding the Government's willingness to negotiate a more favorable deal or restore its initial plea offer

represent, at best, strategic errors that are 'virtually unchallengeable'" (quoting Strickland, 466 U.S. at 690)).

Continuing, Petitioner's claim that, but for his defense counsel's advice, he would have "secur[ed] a substantially shorter term of imprisonment, and potentially a time-served sentence" (Petition at ECF p.5) is purely speculative and belied by what transpired at Petitioner's sentencing. During sentencing, it became apparent this Court was not considering a shorter, five-year sentence advocated by defense counsel, let alone a time-served one. (Compare, e.g., Sent'g Hr'g Tr. 15, 19-21, with id. at 43-45.) Further and significantly, at his sentencing, this Court inquired whether Petitioner was satisfied with defense counsel, to which Petitioner responded he was. (See id. at 5.) Such a statement carries a strong presumption of truth, see Blackledge v. Allison, 431 U.S. 63, 74-76 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); thus, without more, Petitioner would not now be heard to complain of ineffective assistance of counsel. See, e.g., United States v. Logan, 845 F. Supp. 2d 499, 511-12 (E.D.N.Y. 2012) (rejecting ineffective assistance claim where petitioner claimed he was pressured to plead guilty by counsel, but sush claim was contradicted by petitioner's sworn statement, including at sentencing, where petitioner stated he was satisfied with counsel's legal representation) (collecting cases); cf. Oklu v. United States, No. 12-CR-0177, 2016 WL 1383530,

at *3 (S.D.N.Y. Apr. 7, 2016) ("It is well-established that 'allegations a defendant makes in a Section 2255 petition cannot overcome his contrary statements under oath during a plea allocution, which must be given presumptive force of truth.'" (quoting Norville, 151 F. Supp. 3d at 336; further citation omitted) (citation modified).

Petitioner does not meaningfully address the prejudice prong of the Strickland test. Nor does he indicate that, but for defense counsel's alleged ineffective assistance of counsel, Petitioner would have proceeded to trial. See Peterson, 896 F. Supp. 2d at 312. Likewise, other than his bald assertions, Petitioner has failed to proffer any objective evidence demonstrating prejudice. See Norville, 151 F. Supp. 3d at 336 (addressing prejudice prong of the Strickland test; instructing a petitioner must affirmatively prove prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" and "some objective evidence other than [petitioner's] assertions is required to establish prejudice" (quoting Pham v. United States, 317 F.3d 178, 182 (2d Cir.2003)) (citation modified). In the absence of establishing prejudice, Petitioner's claim of ineffective-assistance-of-counsel would fail. Therefore, even if timely, which the Petition is not, the Court would DENY Petitioner habeas relief.

4.   <u>Petitioner's Motion for Bond is Moot and Meritless</u>

"[F]ederal courts have the authority to grant bail to habeas petitioners," <u>Macaluso v. Keyser</u>, No. 18-CV-4830, 2020 WL 8455536, at *1 (E.D.N.Y. Apr. 17, 2020), but that "power is a limited one, to be exercised in special cases only." <u>Mapp v. Reno</u>, 241 F.3d 221, 226 (2d. Cir. 2001). As former Chief Judge Roslynn R. Mauskopf of this District explained:

> A habeas petitioner's bail request "must demonstrate that 'the habeas petition raise[s] substantial claims and that extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective.'" <u>Grune v. Coughlin</u>, 913 F.2d 41, 44 (2d Cir 1990) (quoting <u>Iuteri v. Nardoza</u>, 662 F.2d 159, 161 (2d Cir. 1981)). "[C]ourts in this district have reasoned that 'there must be a demonstrated likelihood that the petition will prevail, based upon claims of a substantial nature upon which the petitioner has a high probability of success, and demonstrating merits that are more than slightly in petitioner's favor, so that victory for petitioner can be predicted with confidence.'" <u>Muja v. United States</u>, No. 10-CV-2770 (NGG), 2011 WL 1870290, at *1 (E.D.N.Y. May 16, 2011) (quoting <u>Beras v. United States</u>, No. 05-CV-2678 (SWK), 2007 U.S. Dist. LEXIS 5273 at *3, 2007 WL 195352 (S.D.N.Y. Jan. 24, 2007)).

<u>Macaluso</u>, 2020 WL 8455536, at *1.

Because the Court has already denied the Petition, Petitioner's motion for bond is **DENIED** as moot. Even if that was not the case, because the instance case is not a special one, it would not warrant the granting of bond. For the reasons discussed,

supra, there is little probability Petitioner's substantive claim of ineffective-assistance-of-counsel would succeed.  Given the Court's lack of confidence as to Petitioner's success regarding his untimely ineffective assistance claim, Petitioner would fail to meet the demanding standard warranting the issuance of a bond. See Hayon v. Reardon, No. 20-CV-4668, 2021 WL 25365, at *4 (E.D.N.Y. Jan. 4, 2021) ("The standard for bail pending habeas litigation is a difficult one to meet."); see also, e.g., Moore v. Vann, 20-CV-0012, 2020 WL 2315694, at *1 (N.D.N.Y. May 11, 2020) ("The fact that petitioner is incarcerated in alleged violation of his constitutional rights does not constitute an extraordinary circumstance.").  Accordingly, if not already mooted by the Court's determination on the Petition, Petitioner's request for release on bond would be **DENIED**.

–*–*–*–

To the extent not explicitly stated herein, the Court has considered Petitioner's remaining arguments and finds them to be without merit.  At bottom, given the record of this case, and having considered the relevant case law, the Court finds: (i) the Petition is untimely, barring this Court's consideration of it; and, (ii) even if, assuming argundo, the Petition were timely, Petitioner would be unable to satisfy the applicable Stickland test, thereby warranting the denial of habeas relief.

CONCLUSION

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's Petition seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1240) is **DENIED** in its entirety;

Relatedly, **IT IS FURTHER ORDERED**, Petitioner's Motion for Bond (ECF No. 1270) is **DENIED** as moot;

**IT IS FURTHER ORDERED**, because there can be no debate among reasonable jurists that Petitioner is not entitled to relief, the Court does not issue a Certificate of Appealability.  See 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005); Baker v. United States, No. 97-CR-0877, 2022 WL 2803556, at *2 (E.D.N.Y. July 18, 2022) ("On the whole, Petitioner has not made a substantial showing of the denial of his constitutional rights, and the [court's decision] thus does not warrant a Certificate of Appealability."); and

**IT IS FURTHER ORDERED**, the Clerk of the Court is directed to mail a copy of this Memorandum and Order to Petitioner at his address of record, including the notation "LEGAL MAIL" on the mailing envelope, and mark as "CLOSED" the corresponding civil case, Case No. 22-CV-6924.

**SO ORDERED.**
/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  January 30, 2026
        Central Islip, New York

28